## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **Jeyker Miguel Lucena-Bernal**, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER GRANTING PETITION** |
| | ) | **FOR HABEAS RELIEF** |
| vs. | ) | |
| | ) | Case No. 1:26-cv-057 |
| **Kristi Noem**, in her official capacity as | ) | |
| Secretary of the Department of Homeland | ) | |
| Security; **Pamela Bondi**, in her official | ) | |
| capacity as Attorney General of the United | ) | |
| States; **Todd Lyons**, in his official | ) | |
| capacity as Acting Director and Senior | ) | |
| Official Performing the Duties of the | ) | |
| Director of U.S. Immigration and Customs | ) | |
| Enforcement; **Sam Olson**, in his official | ) | |
| capacity as Field Office Director of the St. | ) | |
| Paul Field Office of U.S. Immigration and | ) | |
| Customs Enforcement, Enforcement and | ) | |
| Removal Operations; **Kelly Leben**, in his | ) | |
| official capacity as Warden of the Burleigh | ) | |
| County Jail, | ) | |
| | ) | |
| Respondents. | ) | |

Before the Court is Petitioner Jeyker Miguel Lucena-Bernal's Petition for Writ of Habeas Corpus based on 28 U.S.C. § 2241, filed on March 4, 2026. See Doc. No. 1. As explained below, this Court will grant Lucena-Bernal's habeas petition to the extent that the Respondents are required to provide Lucena-Bernal with a bond hearing in accordance with 8 U.S.C. § 1226(a).

## I.    BACKGROUND

Lucena-Bernal is a citizen of Venezuela who entered the United States without inspection on May 25, 2022. See Doc. No. 1. On May 26, 2022, United States Border Patrol ("USBP") encountered the Petitioner. See Doc. No. 5. USBP states that they "released [Lucena-Bernal] with

an I-94 Arrival/Departure Record and paroled him into the United States due to detention capacity" and that the Petitioner "was instructed to report to the nearest [Immigration and Customs Enforcement ("ICE")] office upon reaching his destination." Id.

On November 30, 2022, Lucena-Bernal reported to the Enforcement and Removal Operations field office in Centennial, Colorado. Id. The Petitioner was arrested and issued a Notice to Appear, charging him with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. Id. The Notice also ordered Lucena-Bernal to appear in front of an Immigration Judge on September 5, 2023.[1] Id. The Respondents state that ICE released Lucena-Bernal on an Order of Recognizance. Id. Petitioner alleges that thereafter he filed applications for asylum, withholding or removal, and protection under the Convention Against Torture, and remained in compliance with all requirements of his immigration case. See Doc. No. 1. Lucena-Bernal has no criminal convictions, no pending criminal charges, and no history of violence or dangerous behavior. Id. He is clearly not "the worst of the worst" whom ICE is targeting.

On July 10, 2025, the Department of Homeland Security (DHS) issued guidance that "revisited its legal position on detention and release authorities" as to non-citizens in the United States. See U.S. Customs and Border Protection, Detention of Applicants for Admission, https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf (last visited Mar. 11, 2026). The DHS stated that all aliens who enter the country without being properly admitted are "subject to mandatory detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from DHS custody except by INA § 212(d)(5) parole." Id. As a result, the DHS stated that the "only aliens eligible for a custody determination and release on recognizance, bond, or conditional parole under INA § 236(a) [8 U.S.C. § 1226(a)] are aliens

---

[1] In the Respondent's "Declaration of Deportation Officer Geneva A. Balencia" the date is incorrectly listed as September 5, 2022, rather than September 5, 2023.

admitted to the United States and chargeable with deportability under INA § 237 [8 U.S.C. § 1127]." Id. This new policy reversed decades of practice by federal immigration officials who had previously prioritized detention only for those considered dangerous or at risk to flee.

On January 19, 2026, ICE and Rapid City police officers initiated a vehicle stop in Rapid City, South Dakota, in which Lucena-Bernal identified himself as being a citizen and national of Venezuela. See Doc. No. 5. The Petitioner was subsequently arrested pursuant to an administrative warrant. See Doc. No. 1-1. The Petitioner has remained in custody since January 19, 2026, and has not received an individualized custody redetermination hearing. Id. Lucena-Bernal contends that the Immigration Judge presiding over his case found that they lacked jurisdiction to conduct a bond hearing based on a decision from the Board of Immigration Appeals, *Matter of Yajure-Hurtado*, where the BIA held that the July 10, 2025, DHS policy described above was lawful. See Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025). At the time the habeas petition was filed, Lucena-Bernal was being held at the Burleigh/Morton Detention Center in Bismarck, North Dakota. See Doc. No. 1. However, the Petitioner has since been moved to Kandiyohi County Jail in Willmar, Minnesota. See Doc. No. 5.

In his Petition for Writ of Habeas Corpus, Lucena-Bernal claims he has been wrongly classified as a Section 1225(b)(2) detainee (whose detention is mandatory) rather than a Section 1226 detainee (whose detention is discretionary and who is entitled to a bond hearing). Id. Lucena-Bernal alleges that the Respondents' continued detention of him without a bond hearing violates his constitutional rights and federal law.[2] Lucena-Bernal requests a writ ordering the Respondents

---

[2] The Petition alleges six counts: (1) violation of the Immigration and Nationality Act, (2) violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, (3) violation of the Administrative Procedure Act, 5 U.S.C. § 706(2), (4) violation of the Equal Protection Guarantee of the Fifth Amendment to the U.S. Constitution, (5) violation of the Suspension Clause in Article I, Section 9, Clause 2 of the U.S. Constitution, and (6) unlawful warrantless arrest in violation of 8 C.F.R. § 287.8(c)(2)(I)-(II).

to release him from custody or, alternatively, to afford him a bond hearing in accordance with 8 U.S.C. § 1226(a). <u>See</u> Doc. No. 1. The Respondents have filed a response (Doc. No. 4).[3]

## II.     **DISCUSSION**

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. <u>Zadvydas v. Davis</u>, 533 U.S. 678, 687 (2001); <u>Aditya W. H. v. Trump</u>, Civ. No. 25-1976 (KMM/JFD), 782 F. Supp. 3d 691, 702-03 (D. Minn. May 14, 2025) (collecting cases). The United States Supreme Court has stated that "the general rule" for habeas petitions is that "jurisdiction lies in only one district: the district of confinement." <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 443 (2004). However, "when the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction[.]" <u>Id.</u> at 441 (citing <u>Ex parte Endo</u>, 323 U.S. 283 (1944)); <u>see also</u> <u>Harris v. Ciccone</u>, 417 F.2d 479, 480 n.1 (8th Cir. 1969). The Respondents have acknowledged that the Petitioner was in the District of North Dakota at the time the Petition was filed, and have stated that they do not contest this Court's 28 U.S.C. § 2241 jurisdiction. <u>See</u> Doc. No. 4. Therefore, this Court has jurisdiction over Lucena-Bernal's habeas petition.

In this case, as in more than 3,000 other similar immigration cases filed in federal district courts throughout the country since July 2025, the dispositive issue for the Court to decide in determining whether to grant Lucena-Bernal's habeas petition is whether 8 U.S.C. § 1225(b) or 8 U.S.C. §1226(a) applies. As explained below, the Court concurs with the overwhelming majority

---

[3] When used in this Order, "Respondents" refers to the federal officials named as Respondents. Kelly Leben has informed the Court he will not take any position in this matter and will act in accordance with the Court's orders. <u>See</u> Doc. No. 8.

of federal district courts (more than 350 federal judges across the country) who have ruled on this issue, and the Seventh Circuit Court of Appeals, and concludes that Section 1226(a) applies to the Petitioner.[4] Therefore, the Court will grant the habeas petition to the extent that Lucena-Bernal receives a bond hearing.

8 U.S.C. § 1225 and 8 U.S.C. § 1226 both govern the detention of non-citizens pending removal proceedings. Section 1226(a) sets out the "default rule" for the discretionary detention of aliens "already present in the United States." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Under Section 1226(a), immigration authorities may make an initial determination as to detention, but noncitizens may then request a bond hearing before an immigration judge.[5] 8 U.S.C. § 1226(a); Jennings, 538 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) ("Federal regulations provide that aliens detained under section 1226(a) receive bond hearings at the outset of detention.")). At that hearing, an alien "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." Nielsen v. Preap,

---

[4] See e.g., Cruz Bautista v. Bondi et al., 1:25-cv-00280 (D.N.D. Jan. 7, 2026); Beltran v. Bondi et al., 1:25-cv-00258 (D.N.D. Dec. 5, 2025); Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1062 (7th Cir. 2025) (concluding based on a "preliminary record" that the government's contentions regarding mandatory detention under § 1225(b)(2)(A) are unlikely to succeed); Fuentes v. Olson, No. 25-CV-4456 (LMP/ECW), 2025 WL 3524455, at *1 (D. Minn. Dec. 9, 2025) (citing Demirel v. Fed. Detention Ctr. Phila., Civ. No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025)); Avila v. Bondi, No. CV 25-3741 (JRT/SGE), 2025 WL 2976539, at *5-7 (D. Minn. Oct. 21, 2025); Eliseo A.A. v. Olson, No 25-3381, 2025 WL 2886729, at *2-4 (D. Minn. Oct. 8, 2025); Belsai D.S. v. Bondi, No. 25-CV-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025); Singh v. Lyons, 2025 WL 2932635 (E.D. Va. Oct. 14, 2025); Sanchez Ballestros v. Noem, 2025 WL 2880831 (W.D. Ky. Oct. 9, 2025); Lepe v. Andrews, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Giron Reyes v. Lyons, 2025 WL 2712417, at *4-5 (N.D. Iowa Sept. 23, 2025); Hasan v. Crawford, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); Velasquez Salazar v. Dedos, 2025 WL 2676729 (D. N.M. Sept. 17, 2025); Vasquez Garcia v. Noem, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4-7 (E.D. Mich. Sept. 9, 2025); Lopez-Campos v. Raycraft, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Leal-Hernandez v. Noem, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Romero v. Hyde, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Arrazola-Gonzalez v. Noem, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Aguilar Maldonado v. Olson, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Dos Santos v. Noem, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).

[5] There is an exception to this provision provided in Section 1226(c) that applies to the detention of criminal aliens. Section 1226(c) imposes mandatory detention on "enumerated categories [of aliens] involving criminal offenses and terrorist activities." Jennings, 583 U.S. at 289. Specific categories of "inadmissible" aliens are subject to mandatory detention. See 8 U.S.C. §§ 1226(c)(1)(A), (D), (E). Neither party has argued Section 1226(c) applies to Lucena-Bernal.

586 U.S. 392, 397-98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)). It is clear Section 1226 governs the process of arresting and detaining aliens found inside the United States pending their removal.

Section 1225 applies to "applicants for admission" which are defined as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission fall under either Section 1225(b)(1) or Section 1225(b)(2). Jennings, 583 U.S. at 287. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain other aliens designated by the Attorney General in his discretion." Id. Section 1225(b)(2) is a "catchall provision" that applies to almost all other "applicants for admission" not covered by Section 1225(b)(1). Id. at 289. In discussing the application of Section 1225, the United States Supreme Court has stated that the "process of decision [of who may enter the country] generally begins at the *Nation's borders* and *ports of entry*, where the Government must determine whether an alien *seeking to enter the country* is admissible." Id. at 287 (emphasis added). The Supreme Court also stated Section 1225(b) applies to aliens "*seeking admission* into the country." Id. at 289 (emphasis added). Aliens detained pending removal pursuant to Section 1225(b) are not entitled to bond hearings. Jennings, 583 U.S. at 297 ("Read most naturally, §§1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

In summary, aliens detained under 8 U.S.C. § 1225(b) are not entitled to a bond hearing, whereas persons detained under 8 U.S.C. § 1226(a) are—subject to exceptions found at Section 1226(c)—which do not apply in this case. Lucena-Bernal argues that he is subject to the discretionary detention framework established in Section 1226(a) because he has been in the

United States since May 25, 2022, and is therefore an alien "already present in the United States." See Jennings v. Rodriguez, 583 U.S. 281, 303 (2018). Lucena-Bernal claims that the denial of a bond hearing during his continued detention violates his constitutional rights, federal law, and administrative procedures, and he is consequently being detained unlawfully. See Doc. No. 1.

The Respondents argue that Lucena-Bernal is subject to mandatory detention under Section 1225(b)(2) because he is an "applicant for admission" who is necessarily "seeking admission." See Doc. No. 4. One fact that sets Lucena-Bernal's habeas petition apart from the others addressed by this Court is that Lucena-Bernal has applied for asylum. See Doc. No. 1. Respondents argue this fact indicates that the Petitioner is "seeking admission" under Section 1225. See Doc. No. 4. To support this argument, the Respondents rely on *Chen v. Almodovar*, No. 1:25-CV-8350-MKV, 2025 WL 3484855, at *6 (S.D.N.Y. Dec. 4, 2025). The court in *Chen* reasoned that "seeking asylum" is "seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2) because "'admission' is defined in terms of 'lawful' status, 8 U.S.C. § 1101(a)(13)(A), not physical presence on U.S. soil." Id.

This Court joins many other federal district courts and declines to follow *Chen*.[6] First, "treating a noncitizen with a pending application for asylum as an individual 'seeking admission' under § 1225—no matter how long he has been present in the United States—would be

---

[6] See e.g., Gabriel J. v. Bondi, Civ. No. 26-CV-00865 (SRN/LIB), 2026 WL 295192, at *2 (D. Minn. Feb. 4, 2026); Deicy S.L. v. Bondi, No. 26-CV-797 (MJD/LIB), 2026 WL 323103, at *5 (D. Minn. Feb. 3, 2026), report and recommendation adopted as modified, No. CV 26-00797 (MJD/LIB), 2026 WL 331240 (D. Minn. Feb. 6, 2026); Fausto O.I. v. Noem, No. 26-CV-854 (MJD/LIB), 2026 WL 357652, at *8 (D. Minn. Feb. 4, 2026), report and recommendation adopted sub nom. Fausto O. v. Noem, No. CV 26-854 (MJD/LIB), 2026 WL 357654 (D. Minn. Feb. 9, 2026); Misael T. v. Bondi, No. 26-CV-263 (ECT/EMB), 2026 WL 146510, at *2 (D. Minn. Jan. 20, 2026); Awaale v. Noem, No. 25-cv-4551 (MJD/JFD), 2025 WL 3754012, at *1 (D. Minn. Dec. 29, 2025); Mahamed C.A. v. Noem, No. 25-CV-4551 (MJD/JFD), 2025 WL 3771299, at *3 (D. Minn. Dec. 16, 2025), report and recommendation adopted sub nom; Maldonado v. Olson, No. 25-3142 (SRN/SGE), 795 F.Supp.3d 1134, 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025); Mayamu K. v. Bondi, No. 25-cv-3035 (JWB/LIB), 2025 WL 3641819, at *4 (D. Minn. Oct. 20, 2025); Carlos Q.-A. v. Noem, No. 1:25-1382-MSN-WEF, 2025 WL 2783800, at *7 (E.D. Va. Sept. 30, 2025); Martins de Oliveira v. Hyde, No. 25-cv-13940 (FDS), 2026 WL 74111, at *1, 3 (D. Mass. Jan. 9, 2026).

incongruent with the ordinary meaning of 'seeking admission,' which is 'entering or attempting to enter the country.'" Gabriel J., 2026 WL 295192, at *2 (citing Yao v. Almodovar, No. 25-CV-9982 (PAE), 2025 WL 3653433, at *9 (S.D.N.Y. Dec. 17, 2025)). In the immigration context, the word "enter" means to cross a territorial limit into the country. Id. (citing Goorakani v. Lyons, No. 25-CV-9456 (DEH), 2025 WL 3632896, at *9 (S.D.N.Y. Dec. 15, 2025)). Lucena-Bernal entered the United States in May of 2022. "To the extent that asylum applicants already within the United States continue to 'seek' something, it is not 'entry' to the country; they are already here. Rather, these applicants seek a lawful means to remain in the United States." Goorakani, 2025 WL 362896, at *9; Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 488 n.7 (S.D.N.Y. 2025) (("To the extent that Respondents might point to [petitioner's] asylum application to argue that he continues to 'seek' something, what he seeks is not 'admission' or 'lawful entry' to the United States, but to obtain a lawful means to *remain* here." (emphasis in original)).

Second, *Chen*'s equation of "seeking admission" and "seeking asylum" is incongruent with Congress's distinction between a noncitizen's admission and the granting of asylum. Gabriel J., 2026 WL 295192, at *3 (citing Yao, 2025 WL 3653433, at *9). The INA defines "admission" as a "lawful entry . . . after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Dissimilarly, the decision of whether to grant asylum is not decided at the point of entry, nor is the asylum decision made by an immigration officer. Id. Additionally, "a later decision to grant asylum does not retroactively make the noncitizen's earlier entry 'lawful,' or constitute 'inspection and authorization' in connection with that entry." Id. Rather, a grant of asylum protects a noncitizen from removal, even if his entry was illegal. Id. "Congress expressly decoupled the concepts of removability and asylum" in the INA. Id. Therefore, *Chen* "blurred two distinct legal concepts" in equating "seeking asylum" with "seeking admission." Id.

8

As stated in this Court's prior orders on factually similar habeas petitions, the Court is unpersuaded by the Respondents' statutory interpretation of Section 1225(b)(2)(A).[7] "Respondents' interpretation of the statute (1) disregards the plain meaning of Section 1225(b)(2)(A); (2) disregards the relationship between Sections 1225 and 1226; (3) would render a recent amendment to Section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation." Beltran, 1:25-cv-00258 (quoting Alejandro v. Olson, 2025 WL 2896348, at 6 (S.D. Ind. Oct. 11, 2025)). This Court continues to agree with the overwhelming majority of federal district courts throughout the country, and the Seventh Circuit Court of Appeals, that the applicable detention scheme for noncitizens already within the country is under Section 1226(a), absent any exceptions under Section 1226(c).[8] The dockets of federal district courts across the country are being inundated with cases such as this. The filing of emergency habeas petitions are increasing daily and are never-ending. Until the appellate courts, the Supreme Court, and Congress weigh in on the issue, the nightmare will continue. Common sense and the law strongly suggest detainees should be entitled to a due process hearing (a bond hearing). Unfortunately, common sense is not as common as it used to be.

Lucena-Bernal has been in the United States since May 25, 2022. See Doc. No. 1. Thus, he is an alien "already in the country" rather than an alien "seeking admission into the country." See Jennings, 583 U.S. at 287-89. Accordingly, his detention is governed by Section 1226(a)'s discretionary framework, and not the mandatory detention provisions of Section 1225(b). [9] See id.

---

[7] See Cruz Bautista, 1:25-cv-00280; Beltran, 1:25-cv-00258. The Court is aware of the contrary 2-1 holding by a panel of the Fifth Circuit Court of Appeals in Buenrostro-Mendez v. Bondi, ___ F.4th ___, 2026 WL 323330 (5th Cir. Feb. 6, 2026). That decision is not binding on this Court, nor does this Court find its reasoning to be persuasive.

[8] See supra note 4.

[9] The resolution of this statutory-interpretation question in Lucena-Bernal's favor makes it unnecessary to address the habeas petition's remaining grounds.

The continued detention of Lucena-Bernal under 8 U.S.C. § 1225(b) without a bond hearing is contrary to federal law. Therefore, the Court will order the Respondents to provide Lucena-Bernal with a bond hearing in accordance with 8 U.S.C. § 1226(a).

## III.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, it is ordered that:

(1.) The Petitioner's Petition for a Writ of Habeas Corpus (Doc. No. 1) is **GRANTED** to the extent it requests a bond hearing before an Immigration Judge.

(2.) The Respondents shall provide the Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within fourteen (14) days from the date of this Order.

(3.) If the Respondents do not provide the Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, the Petitioner must be immediately released from detention.

(4.) Within twenty (20) days from the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing is held, advise the Court regarding the Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required.

(5.) The Respondents are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of the Petitioner from the District of North Dakota and the District of Minnesota before the ordered bond hearing.

**IT IS SO ORDERED**.

Dated this 13th day of March, 2026.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court

10